The Bradstreet Company *v.* Oswald.

1. The circulation of false and unfounded communications concerning the business standing of another, from which, as a natural result, the latter suffers a special damage, gives a right of action for damages actually sustained, even though such communications may have been innocently and negligently, but not maliciously, made.

2. Where, in an action for words written and alleged to be "false and unfounded," there is no allegation of malice in the printing or publication, the plaintiff is entitled to recover only his actual damages, and must by his declaration allege the various elements of actual damage with such certainty as fully and distinctly to advise the defendant of the sources and extent of the injury. And although a declaration in such a case may set out generally a substantial cause of action, inaccurate and uncertain averments as to the elements and measure of damage will not prevail as against a special demurrer directed to such averments.

3. Where it is alleged that, because of the words so written, the plaintiff's credit was impaired to such an extent as to require the expenditure by him of a certain sum pleaded in gross, and which is alleged to have been expended in the payment of expenses while traveling for the purpose of removing from the minds of the persons with whom he dealt the effect of the false impression thereby created, upon special demurrer to the averment of such expenditures in gross, the court should require the plaintiff to set forth a fairly accurate, though not unnecessarily minute, itemized

statement of the sums so expended and upon what account, with an additional averment that such sums were necessarily expended.

4. If in consequence of the words thus spoken it be alleged that creditors of the plaintiff, who were advancing to him goods upon credit, were induced to demand immediate payment of their claims, upon which he would otherwise have been extended time, and that the plaintiff was, in consequence, compelled to pay a discount upon his notes in order to raise cash with which to meet such indebtedness, such sums so paid out as discount are recoverable as a part of the actual damages; but if pleaded in gross, the defendant, upon special demurrer, is entitled to have a statement of the character indicated in the preceding head-note, touching such items.

5. Profits alleged to have been lost by reason of the plaintiff's inability to buy goods to be in turn sold to his customers, are too remote and conjectural to be recovered.

July 8, 1895. By two Justices.

Action for damages.  Before Judge EVE.  City court of Richmond county.  November term, 1894.

To the declaration of Oswald v. The Bradstreet Company, defendant filed a demurrer.  Plaintiff amended the declaration, and defendant filed written objections thereto, and subject to the same, offered grounds of special demurrer.  The demurrers were overruled, and defendant excepted.  The declaration alleges, that in 1892, and for some years previously, plaintiff was engaged in a general merchandise business at Allendale, S. C., and had built up a large, remunerative and profitable business, and his financial credit, at the time of the injury hereafter complained of, with the various merchants with whom he was dealing, was good and unquestioned, and he was able to buy from time to time on a credit all the merchandise necessary to supply his customers; that defendant, whose business was that of a commercial agency, about October, 1892, distributed among its customers in Georgia and South Carolina and elsewhere, a statement in print or writing that a judgment had been recorded against plaintiff for $129, meaning thereby that he had been sued in the courts and a judgment had been rendered against him for that amount, which state-

ment or representation was wholly false and unfounded; that by reason of said statement merchants with whom he was dealing, and from whom he had ordered a large part of his stock for the winter of 1892–93, refused to fill his orders, and others to whom he was indebted suddenly and unexpectedly drew sight drafts upon him, and he was unable to replenish his stock of merchandise and thus keep his trade with his customers, the profits of which would have been worth to him fully the amount herein sued for ($1,995); and that said profits were entirely lost to him, his credit broken down and his mercantile business almost wholly destroyed by reason of said false representation.

The grounds of the original demurrer were, that the declaration sets forth no cause of action; that it fails to set forth the merchants from whom plaintiff had ordered stock, their residences, and the amount thereof; that it fails to allege what efforts, if any, were made by him to replenish his stock, or to allege that he was unable to buy for cash; that it fails to allege in what the profits of the business consisted, the allegation as to the same being too remote and indefinite to be the basis of a recovery.

The amendment inserts words and figures in the declaration so as to make the same allege as follows:    In 1892 and for some years previous thereto, plaintiff was engaged in a general merchandise business at Allendale, S. C., and had built up a large, remunerative and profitable business, and his financial credit, at the time of the injury hereafter complained of, with the various merchants with whom he was dealing, was good and unquestioned, and he was able to buy from time to time on credit all the merchandise necessary to supply his customers, he not having the means to pay in cash; that defendant, whose business was that of a commercial agency, about October, 1892, distributed among its cus-

tomers in Georgia and South Carolina and elsewhere, many of them being persons with whom plaintiff had never had any business dealings, a statement in print or writing that a judgment had been rendered against him for $129, meaning thereby that he had been sued in the courts and a judgment had been rendered against him for that amount, and that he was insolvent; and said publication meant, and was understood by the subscribers to mean, that he was embarrassed financially and unable to pay his debts, and such publication was made in reference to his trade and was calculated to injure him therein; that said statement or representation was wholly false and unfounded, and by reason of the same, merchants with whom he was dealing at the time, and from whom he had ordered a large part of his stock for the winter of 1892–93, and who were advancing him money to aid and carry on his business, refused to fill his orders or advance him money, to his damage $1,000; that others to whom he was indebted, and who were indulging him at the time, suddenly and unexpectedly drew sight drafts upon him, thereby compelling him to pay discounts of $200 by which to raise the money to pay the drafts; that by reason of said false statement or representation he was unable to replenish his stock of merchandise and thus keep his trade with his customers, the profits of which would have been to him fully the amount sued for; and that said profits were entirely lost to him, his credit broken down and his mercantile business almost wholly destroyed, and an outlay incurred of $250 in traveling expenses and loss of time to enable him to remove the impression created by reason of said false statement or representation; by all of which wrongs and injuries he has been damaged in the sum of $1,995.

The grounds of objection to the amendment were, that it is unwarranted by the original declaration; that it sets out a new cause of action; and that it is too indefi-

nite and uncertain as to the elements of damage claimed, to put defendant on notice of the items to be established to constitute the claim. The additional grounds of demurrer are, that the announcement, if made as alleged, was plain and unambiguous, and the meaning of the same could not be extended by the allegation that defendant meant thereby to charge that plaintiff was embarrassed financially and unable to pay his debts. Also, because it is not alleged that the parties who were indulging plaintiff were under any legal or moral obligation to do so, and their names, and the amount of the drafts drawn, and the amount of money discounted and by whom, are not alleged. Also, that plaintiff fails to give the names of the creditors who refused to extend him credit, and the names of customers who failed to trade with him on that account, and the names of those from whom he had ordered stock for 1892–93, and who were advancing him money, and who refused to fill his orders or advance him money; and the general claim of $1,000 damages in reference to this item is not particularized so as to put defendant on notice of what it consists, and such claim is too remote to be the basis of a recovery. Also, that plaintiff fails to itemize the outlays of $250 for traveling expenses and loss of time, and he fails to allege that the same were necessary, and that the alleged injurious impressions could not have been removed otherwise than by incurring such outlay; and that the general claim of $1,995 damages is too indefinite, remote and uncertain to be the basis of a recovery.

J. S. & W. T. DAVIDSON, for plaintiff in error.

E. F. VERDERY and W. H. FLEMING, *contra*.

ATKINSON, Justice.

The official report sufficiently states the facts.

1. We think the declaration contains such a substantial cause of action as would prevail against a gen-

eral demurrer. It alleged that the defendant caused to be circulated, concerning the plaintiff and the business in which he was engaged, a certain rumor which was wholly false and unfounded, and which, if believed, was calculated seriously to embarrass him in his business. It is a rule of law of universal application, that wherever one person commits a wrong upon the person, property or reputation of another, which is accompanied with damage, the latter may maintain an action. The privilege of free speech does not confer upon one individual the right to use that privilege to the injury of another; and if one print or publish words concerning another, or his business, which are themselves false, the law will presume that it was done maliciously, and award damages accordingly. The idea of malice, however, may be rebutted, but such evidence is receivable only in mitigation of damages and not in extinguishment of the right of action; for even though the words be innocently or negligently spoken or printed, but not maliciously, if the plaintiff, as a result thereof, suffer a special particular damage, he may nevertheless recover such special damage. The declaration in this case it is true does not allege that the words were maliciously written, but it does allege a special damage resulting from the negligent act of the defendant; and though he be guiltless of an evil design in the premises, he must, notwithstanding, answer for the damage actually done.

2. In stating the elements of damage in such a case, the declaration should plainly, fully and distinctly allege how and wherein the plaintiff suffered damage because of the wrongful act of the defendant, and these facts should be averred with such fullness and precision as to enable the defendant intelligently to plead thereto. To say, in general terms, that in consequence of the wrongful act alleged against the defendant, the plaintiff had suffered damage in the sum of one thousand dollars or

in other gross sum, without alleging how or wherein
the damage consisted, would be good as against a gen-
eral demurrer to the declaration as stating no cause of
action; but as against a special demurrer demanding a
more minute and accurate statement of the elements of
damage, such a declaration would not prevail. One of
the most universal rules of pleading is, that the plaintiff
should not only set forth a cause of action, but should
allege his cause of action with such fullness and preci-
sion as will enable the defendant to answer.

3, 4. The plaintiff alleged, that in consequence of the
publication of these false and unfounded rumors, it be-
came necessary for him to expend a considerable sum of
money in his effort to communicate with and remove
from the minds of persons with whom he dealt errone-
ous impressions made by the false representations of
the defendant. He further alleged, that in consequence
of these false statements, a great many persons with
whom he had commercial transactions, became doubtful
of his solvency, and demanding immediate payment of
his debts, he was compelled, at a great expense, to dis-
count his own notes in order to raise cash with which to
meet such debts and silence the clamors of his creditors;
and he likewise alleged as one of the elements of dam-
age this fact, and the measure of that damage to be the
amount he had to pay in order to have his notes dis-
counted. There was a special demurrer directed to these
two averments in the declaration, and the demurrer was
upon the ground that the averments were too general
to inform the defendant of the nature of the plaintiff's
demand, in that they did not set out the names of the
persons upon whose minds the false impressions were
made, nor specifically state the sums of money actually
expended by him and the manner of the expenditure in
removing these impressions. The demurrer was also
special to that portion of the declaration which alleged

the incurring of expense for the discounting of his notes, upon the ground that such averments were too uncertain and too general.    We think the special demurrers in these instances were well taken, and the court should have required the plaintiff to set forth a fairly accurate, though not unnecessarily minute, itemized statement of the sums so expended and upon what account, with an additional averment that such sums were necessarily expended.

5. The plaintiff alleged as an element of damage, amongst other things, that in consequence of the injury to his credit caused by the wrongful misrepresentations of the defendant, he was unable to obtain goods to be by him in turn sold to his customers in the conduct of his mercantile business, and that as the result of his inability to buy the goods, he lost profits that he might have earned otherwise.    We think such damages are too remote and speculative, and are too much dependent upon other and independent causes, to be made the basis for a recovery.    There are too many hazards and chances dependent upon the conduct of a mercantile business, to allow prospective profits in the computation of damages.    Of course, in a special mercantile transaction, where the anticipated profit is capable of exact ascertainment and the loss of it traceable directly to the wrongful act of the defendant, a recovery may be had; but such is not the case disclosed by the record now under consideration.

Let the judgment of the court below be    *Reversed.*